UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CATHERINE MARIE TOWNES,

    Plaintiff,

v.                                                                              Case No. 1:18-cv-645

                                                                                Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,

_____/

**OPINION**

        Plaintiff brings this *pro se* action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied her application for disability insurance benefits (DIB).

        Plaintiff alleged a disability onset date of April 19, 2014. PageID.205. The alleged onset date is one day after an administrative law judge (ALJ) denied a previously filed application on April 18, 2014. PageID.91.[1] Plaintiff identified her disabling conditions as: migraines; tinnitus (ringing in the ears); very high anxiety; a phobia of being out of the house; panic attacks; picking at skin, face and arms; depression; hypertension; hyperlipidemia; and, obesity. PageID.216. Prior to applying for DIB, plaintiff completed one year of college and had past employment as a production assembler. PageID.39, 64, 218. An Administrative law judge (ALJ) reviewed plaintiff's application *de novo* and entered a written decision denying benefits on November 29,

---

[1] Plaintiff filed a *pro se* appeal of this denial under the name "Cathy Townes," which was dismissed on April 5, 2016. *See Cathy Townes v. Commissioner of Social Security*, 1:15-cv-1290 (W.D. Mich.) (Judgment) (ECF No. 12).

1

2017. PageID.32-40. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ's DECISION

Plaintiff's application for disability benefits failed at the fifth step of the evaluation.[2] At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity from her alleged onset date of April 19, 2014 through her date last insured of June 30, 2014. PageID.35. At the second step, the ALJ found that through the date last insured, plaintiff had severe impairments of tinnitus and an adjustment disorder with mixed anxiety and depressed mood. PageID.35.

At the third step, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.35. The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she has a hearing limitation, and as such she is limited to noise intensity level of moderate or less. The claimant can have only occasional and superficial interaction with coworkers and supervisors. She cannot interact with the public. She is limited to jobs only requiring the ability to understand, remember, and apply information to perform simple tasks, make simple decisions, and adapt to occasional changes in workplace routines.

PageID.36-37. The ALJ also found that through the date last insured, plaintiff was unable to perform any past relevant work. PageID.39.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the light exertional level in the national economy. PageID.39-40.

---

[2] The ALJ noted that "Pursuant to Acquiescence Rulings 98-3(6) and 98-4(6), unless there is new and material evidence documenting a significant change in the claimant's condition, a residual functional capacity and findings pertaining to past relevant work, made in a prior hearing decision by an Administrative Law Judge, are binding on subsequent adjudicators[.]" PageID.32. The Court has reversed ALJ decisions which relied on these Acquiescence Rulings contrary to the principles set forth in *Earley v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018), which examined the principles of res judicata as those principles pertain to a claimant's subsequent application for benefits. Under the facts in this case, the Court concludes that the ALJ performed an independent analysis of the evidence consistent with the principles set forth in *Earley*.

Specifically, the ALJ found that claimant could perform the requirements of occupations in the national economy including garment sorter (55,000 jobs), folder (53,000 jobs), and mail sorter (52,000 jobs). PageID.40. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, at any time from April 19, 2014 (her alleged onset date) through June 30, 2014 (her date last insured). PageID.40.

### III. DISCUSSION

Plaintiff filed a *pro se* brief.[3] The gist of plaintiff's brief is that she suffers from tinnitus which is disabling, causing migraine headaches and panic attacks. Plaintiff's Brief (ECF No. 19, PageID.596-598. Plaintiff's DIB claim involves a short period of time of less than three months, from her alleged disability onset date of April 19, 2014, through her date last insured of June 30, 2014. Plaintiff's brief, which was filed on November 15, 2018, does not reference her condition during the relevant time period or discuss the ALJ's adverse decision. Rather, plaintiff's brief appears to set forth her condition as it existed when she filed the brief on November 15, 2018 – almost 4½ years after her date last insured.

As an initial matter, the ALJ found that plaintiff's migraine headaches were not a medically determinable impairment during the relevant time period in 2014:

> The claimant also alleged suffering from migraines. Despite this allegation, she provided conflicting reports about her alleged headaches as a June 2014 note indicated she got migraines with loud noises, yet she denied getting headaches during an appointment only one month earlier (Ex B2F/2-3 and B4F/11). The record contains no diagnosis of such a condition, and therefore it is not a medically determinable impairment through the date last insured.

PageID.35.

The ALJ found that "there is very little objective evidence between the date of

---

[3] At the outset of her decision, the ALJ stated that "[a]lthough informed of the right to representation, the claimant chose to appear and testify without the assistance of an attorney or other representative." PageID.32. The ALJ also noted that plaintiff was familiar with the process, having had a previous hearing. PageID.51, 61.

5

the prior decision and the date last insured" and that "this evidence does not demonstrate a worsening of the claimant's symptoms during the applicable period." PageID.38. The ALJ reviewed plaintiff's relevant medical records as follows:

> Other than the psychotherapy notes, there are two treatment notes dated within the period at issue. Neither demonstrates any change in her functioning, however. When she met with her primary care provider in May 2014, she endorsed difficulty getting out of the house and that she checked her purse numerous times. However, despite the severity of her reported mental health symptoms, that treatment note indicated she had an appropriate mood and affect (Ex B4F/1 1).
>
> The claimant also reported ongoing tinnitus when she met with her primary care provider. One month later, in June 2014, she had a follow-up for her tinnitus and hearing. She reported that sleeping pills helped. She also stated she used ear plugs with all loud noise exposure. Testing showed no changes in her hearing since her last exam (Ex B2F/2-3) [PageID.305-306]. Accordingly, neither treatment note demonstrates any changes in the claimant's functional abilities.
>
> Additionally, the psychotherapy notes from April 2014 through June 2014, which is the only period at issue in this decision, contain no significant mental status exam findings. What these notes do show frequently, however, is improvement in the claimant's symptoms (Ex B3F/48-56 [and duplicates at B7F/19-27]). Although this improvement was consistently described as mild, it does not support a finding that her symptoms had increased within the brief period at issue in this decision.

PageID.38.

> The ALJ also reviewed the opinion evidence as follows:
>
> As for the opinion evidence, William Schirado, Ph.D., a State agency psychological consultant opined the residual functional capacity from the prior decision should be adopted because the evidence did not show a worsening of the claimant's functioning since the date of the prior decision through the date last insured (Ex B4A). I give this assessment significant but not great weight. Although the objective evidence demonstrates no overall change in the claimant's functioning since the date of the prior decision, the criteria used to evaluate mental disorders has changed since the date of Dr. Schirado's opinion. Specifically, the paragraph B criteria and listings have changed. This change in policy necessitates a minor modification in the terms used to formulate the current residual functional capacity compared to those used in the prior decision in order to make the current residual functional capacity complaint with the new regulations.

PageID.38.

The relevant medical record includes a re-check of plaintiff's tinnitus on June 16, 2014. PageID.305. At that time, plaintiff was examined by a specialist, Andrew M. Behler, D.O., M.P.H. (Otolaryngology / Head & Neck Surgery). PageID.304-321. The doctor diagnosed plaintiff with "Tinnitus, benign idiopathic bilateral". PageID.305. Plaintiff's treatment plan included continued use of ear plugs (ear protection) and medications, a recommendation for hearing aids to help mask the tinnitus, and a follow-up office visit in 12 months. PageID.305. Plaintiff's treatment plan did not include any work restrictions posed by the tinnitus. Nevertheless, the ALJ recognized that plaintiff had a hearing limitation during the relevant time period, "and as such she is limited to noise intensity level of moderate or less." PageID.36.

Finally, plaintiff's daughter submitted a narrative Third Party Function Report (received on November 19, 2016). PageID.268-272. The ALJ gave limited weight to this report:

> Additionally, the claimant's daughter submitted a Third Party Function Report that described the claimant's medical conditions and some functional limitations (Ex Bl3E). However, more than limited weight cannot be given to these statements because they, like the claimant's, are not consistent with the preponderance of opinions and observations by medical doctors in this case. These statements largely pertain to the claimant's functioning outside the period at issue.

PageID.38. This statement appears to represent plaintiff's current condition. While the statement speaks of plaintiff's deteriorating condition, there is no evidence of plaintiff's condition during the relevant time period. PageID.268, 270. After reviewing the administrative record and briefs, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, plaintiff's claims of error are denied.

**IV.	CONCLUSION**

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g).  A judgment consistent with this opinion will be issued forthwith.

Dated:  September 23, 2019             /s/ Ray Kent
                                                                        United States Magistrate Judge